# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| Nancy Lea Goens and Timothy Allen Goens, | )<br>)<br>) |
| Plaintiffs, | ) |
| vs. | ) No. 09-0422-CV-W-FJG |
| Southern Union Company d/b/a Missouri Gas Energy, | )<br>)<br>) |
| Defendant. | ) |

## ORDER

Pending before the Court are (1) Southern Union Company d/b/a Missouri Gas Energy's (hereafter "MGE") Motion to Exclude Plaintiffs' Experts (Doc. No. 59); (2) Goens' Motion to Exclude Certain Testimony of Defendant MGE's Expert Sammy Russo (Doc. No. 61); and (3) Goens' Motion to Exclude Certain Testimony of Defendant MGE's Expert Michael Schlatman (Doc. No. 63).

As an initial matter, the parties' requests for oral argument on these motions (see Doc. Nos. 61 and 63) will be **DENIED.**

**I.** **Background**

This case arises out of a fire that occurred in plaintiffs' home on April 27, 2004. Plaintiffs allege that the fire occurred due to the negligence of an MGE gas service technician who relit the pilot light of the water heater in the basement of plaintiffs' residence on April 14, 2004. Plaintiffs allege the MGE technician negligently failed to place the combustion access cover back on the water heater after relighting the pilot light. They further allege that a flame roll-out occurred within the water heater on April 27, 2004, igniting nearby combustible materials and causing extensive damage to the plaintiffs' residence. Plaintiffs further allege that the MGE gas service technician failed to remove combustibles that were near the water heater and/or failed to advise plaintiffs that storing combustible materials such as boxes, etc., near the water heater presented a dangerous condition and fire hazard.

Defendant MGE denies liability, and contends that any damages sustained by

plaintiffs were caused by their storage of combustible materials next to the water heater and the storage of a leaking propane bottle next to the water heater. MGE also asserts an affirmative defense, that all plaintiffs' claims are barred because natural gas was distributed and sold to the subject residence in compliance with all industry standards and governmental regulations.

## II. Legal Standard

Rule 702 of the Federal Rules of Evidence provides:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

The proponent of expert evidence must show by a preponderance of the evidence that the expert is qualified to render his opinion and the methodology underlying his conclusions is valid. Marmo v. Tyson Fresh Meats, Inc., 457 F.3d 748, 857-58 (8th Cir. 2006). Under Daubert all expert testimony must be "[n]ot only relevant, but reliable." See Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579, 589 (1993). Furthermore, "[w]here opinion evidence . . . is connected to existing data only by the ipse dixit of the expert, a district court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." Pro Serv. Auto., L.L.C. v. Lenan Corp., 469 F.3d 1210, 1216 (8th Cir. 2006).

Additionally, the court must separate expert opinion evidence based on "'good grounds' from subjective speculation that masquerades as scientific knowledge." See Presley v. Lakewood Engineering and Mgf. Co., 553 F.3d 638, 643 (8th Cir. 2008). This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid, and whether that reasoning or methodology can properly be applied to the facts in issue. Daubert, 509 U.S. at 592; see also Fireman's Fund Ins.

Co. v. Canon U.S.A., Inc., 394 F.3d 1054, 1057 (8th Cir. 2005). To be admissible, expert testimony must be "sufficiently tied to the facts of the case that it will aid the jury in resolving a factual dispute," and "must be supported by appropriate validation – i.e., 'good grounds,' based on what is known." Daubert, 509 U.S. at 590-91 (quoting United States v. Downing, 753 F.2d 1224, 1242 (3d Cir. 1985)).

Factors district courts may consider in determining the reliability of expert testimony include: (1) whether the theory or technique has been or can be tested; (2) whether the theory or technique has been subjected to peer review and publication; (3) the known or potential rate of error for the theory or technique; and (4) the degree of acceptance of the theory or technique within the relevant discipline. Daubert, 509 U.S. at 593-94; Pro Serv. Automotive, L.L.C. v. Lenan Corp., 469 F.3d 1210, 1215 (8th Cir. 2006), quoting Smith v. Cangieter, 462 F.3d 920, 923 (8th Cir. 2006). The reliability test is "flexible," and the factors established by the Supreme Court in Daubert are not a "'definitive checklist or test.'" Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141-42 (1999)(quoting Daubert, 509 U.S. at 593).

### III. Southern Union Company d/b/a Missouri Gas Energy's Motion to Exclude Plaintiffs' Experts (Doc. No. 59)

Defendant challenges plaintiffs' experts Larry Jennings and Carl Martin, as "speculative, unsupported by the facts and the science, and fail to meet the requirements for admissibility under the Federal Rules of Evidence and Daubert." See Doc. No. 59.

#### A. Larry Jennings

Defendant argues that Mr. Jennings' opinions as to fire origin and cause are not reliable under Daubert. Jennings is currently the Chief of the Johnson County Fire Protection District, and was a Senior Investigator with American Family Insurance at the time of the fire. A large portion of his report appears to be about burn patterns and fire location, and does not appear to be objected-to. The part of Mr. Jenning's opinion that is objected-to is that "the fire was caused by flames escaping from the interior of the water heater burner chamber due to failure or malfunction" and that the flames were permitted

3

to escape as a result of the outer access door not being in place.  See Doc. No. 60, Ex. A, p. 1.  Defendant indicates that Jenning's deposition indicates that Jennings has no bases for his opinions (Doc. No. 60, Ex. B., 31:1-16, 33:19-34:2), that he bases his opinions solely on the expert reports and opinions of Carl Martin (id. at 31:1-16), that he incorporated Martin's opinions into his own (id.), that he cannot state and does not know what the alleged malfunction of failure of the water heater was that purportedly caused the fire (id. at 22:3-14, 30:14-17), and that he has no independent opinion that the fire was caused by "flame roll out."  Id. at 33:10-34:2.  Defendant argues that this opinion is not helpful to the jury as it has no independent basis.

With respect to Jennings' opinion that the outer access cover door was not on the water heater at the time of the fire, defendant argues that this opinion is based purely on speculation with no facts or evidence to support the conclusion.  Defendant argues that in his deposition, Jennings admits that this opinion is a "possibility as opposed to a conclusion."  Id. at 47:25-48:10. Defendant indicates that Jennings admits that the firefighting water stream could dislodge the outer access cover door.  Id. at 59:15-60:9; 63:19-64:7.  Therefore, defendant argues that these opinions do not meet the level of certainty required to be helpful to the jury.

In response, plaintiff argues that (1) an expert is allowed to consider other expert opinions, valuations and conclusions to form his opinions as long as the facts or data are of a type reasonably relied upon by experts in the particular field, see FRE 703, Advisory Committee Notes; (2) attacks on Jennings' reliance on Martin's report go to weight and not admissibility of the opinions, and the proper venue for attack is on cross-examination (First Union Nat'l Bank v. Benham, 423 F.3d 855, 862 (8th Cir. 2005); Larson v. Kempker, 414 F.3d 936, 941 (8th Cir. 2005)), noting that MGE's own expert testified that if he had been investigating the cause of the subject fire, he would have brought in an engineer to conduct further testing since a fire investigator should not testify outside his area of expertise.  See Schlatman deposition, Doc. No. 72, Ex. 5, pp. 30:1–32:18; (3) Jennings is not claiming to

be an expert on water heaters or the mechanism behind "flame roll-out," and is instead being offered as an expert on the origin and cause of fires, and even if he is not allowed to delve into the specific mechanism of failure (i.e., "flame roll-out"), he ought to be allowed to testify as to the precise area of origin of the fire and his opinion that there was a malfunction involving the water heater.

Plaintiffs further indicate that defendant takes Jennings' testimony out of context as to whether it was just a "possibility" that the outer access door was positioned on top of blocks at the time of the fire (Jennings called this possibility "highly unlikely"), and that Jennings testified that the burn patterns on the surface of the water heater clearly demonstrate that the outer access cover was not in place on the water heater during the fire. See Doc. No. 72, Ex. 6, pp. 84:1 - 85:3. Plaintiffs also note that Mr. Jennings has first hand observations as the fire investigator for the insurance company at the scene, and that none of defendant's experts had that experience, thus making his testimony even more helpful to the jury.

Defendant replies that (1) Jennings has merely incorporated Martin's opinion regarding "flame roll-out" into his own, and he has no independent opinions regarding the cause of the fire; (2) another expert's opinions are not the type of data reasonably relied upon by an expert in forming his own opinion; (3) Jennings is merely "speculating" as to the location of the outer cover doors.

After considering the motion, the Court finds it should be **GRANTED IN PART** and **DENIED IN PART**. Mr. Jennings shall not testify about the specific mechanism of the water heater failure, as he bases his opinion entirely on the opinion of Mr. Martin. However, Mr. Jennings will be allowed to testify as to the precise area of origin of the fire and his opinion that there was a malfunction involving the water heater.

### B. Carl Martin

Carl Martin is a mechanical engineer with specialized knowledge regarding water heaters and flame roll-out. Mr. Martin was brought in by Mr. Jennings during his cause and

origin investigation in 2004.

      Defendant argues that Mr. Martin's opinions do not meet the <u>Daubert</u> requirements as Mr. Martin did not meet the standard set forth by the National Fire Protection Association in its publication NFPA 921: Guide for Fire and Explosion Investigations (2004). Defendant first argues that Martin's opinions regarding flame roll and inadequate combustion air (<u>see</u> Doc. No. 72-2, p.2) are unsupported and speculative in that Martin did not see evidence in certain locations (the water heater burner chamber, its inner heat shield, or on the water heater's exterior) of flame roll-out. Further, defendant argues that Martin claims that the fire was caused by inadequate combustion air that resulted in the purported flame roll-out, yet he cannot state when the water heater began to malfunction. In response, plaintiffs note that the defendant's arguments regarding the locations where flame roll-out was not found are misleading, as Martin testified that these observations do not rule out flame roll-out. Additionally, plaintiff notes that defendant does not explain the relevance as to the precise timing of the malfunction/inadequate combustion air; instead, Martin apparently testified that inadequate air combustion may or may not have played a role in the flame roll out (Doc. No. 72, Ex. 8, p. 159:2-13). Additionally, Martin testified that "flame rollout is an anomaly that . . . can happen [in his personal experience] . . . at a specific point in time and then not occur for days, hours, weeks after that." Doc. No. 72, Ex. 8, p 148:23-149:3.

      Next, defendant argues that Martin's opinion that the MGE service technician failed to replace the water heater's outer cover door after re-lighting the appliance, allowing the flames to escape the burner chamber and ignite nearby combustibles, resulting in the fire [<u>see</u> Doc. No. 72-2, p. 11], is unsupported because he "ignores" the testimony of the service technician (Eric Miller, who apparently testified it was his custom to always replace the outer access cover after relighting the pilot light on such an applicance); Fire Captain Michael Cangelosi (who said it was possible for the water stream to have knocked the outer access cover off the face of the water heater); and Michael Dresel (an MGE employee who relayed that an unidentified Independence firefighter allegedly told him at the scene of the

6

fire that the outer access door was in place upon their arrival and was subsequently knocked off by the stream of the water hose). After reviewing the parties' arguments, however, the Court is of the opinion that this is an area for cross-examination, not an area for striking opinions wholesale. The factual basis underlying an expert's opinion goes toward the credibility and not the admissibility of the testimony and may be challenged by the opposing party on cross-examination. Minnesota Supply Co. v. Raymond Corp., 472 F.3d 524, 544 (8th Cir. 2006). Also, the factual basis of an opinion may rest on certain assumptions. See, e.g., Synergetics, Inc. v. Hurst, 477 F.3d 949, 956 (8th Cir. 2006) (recognizing that disagreement with the assumptions and methodology used by the damage expert did not warrant exclusion); Frosty Treats, Inc. v. Sony Computer Entm't Am., Inc., No. 03-0378-CV-W-SOW, 2004 WL 5500075, at *3 (W.D. Mo. March 3, 2004) (noting that survey expert could assume that other evidence would prove certain facts as true when formulating his opinion). Further, the argument that Martin "ignored" certain testimony is specious, given that Martin's report was prepared long before the depositions of the witnesses were taken.

Finally, defendant argues that Martin's opinions regarding the propane bottle (see Doc. No. 72-2, p. 2, indicating his belief that the propane storage bottle was ruled out as a possible cause of the fire) are unsupported and speculative, in that Martin "ignores" evidence that certain witnesses observed the propane bottle leaking immediately after the fire." Again, though, this goes to the factual basis of the opinion, which can be attacked on cross examination. Further, plaintiffs note that Martin considered, but ruled out, a leak in the propane bottle as a credible cause of the fire because the burn patterns and heat exposure he observed on the propane bottle and attached camping stove were inconsistent with the propane bottle being the cause or origin of the fire. See Martin Report attached as Ex. 2 to Doc. No. 72; Martin Transcript, Ex. 8 to Doc. No. 72, pp. 175:2 - 177:9.

After considering this motion, the parties' arguments and the expert report, the Court finds that defendant's motion to strike Mr. Martin's opinions should be **DENIED.**

## IV. Goens' Motion to Exclude Certain Testimony of Defendant MGE's Expert Sammy Russo (Doc. No. 61)

Dr. Sammy Russo was retained by defendant to provide expert testimony as to the cause of the fire at the Goens residence. Plaintiff moves to strike the following opinions and conclusions:

Opinion 5: "The evidence indicates that the outer cover and heat shield were in place 13 days prior to the fire and after the Missouri Gas Energy service call (Employee Statements attached)."

Opinion 6: "The best evidence indicates that Missouri Gas Energy did not cause or contribute to the cause of this incident and that gas service was provided in a manner which was safe and consistent with applicable pipeline safety regulations and prevailing industry practices."

Plaintiff suggests that Dr. Russo's opinion that the outer cover and heat shield were in place is based primarily from the story of biases eyewitnesses, which is "the sort of hearsay testimony whose admission the Rule was meant to foreclose. The trial process is better served when a biased eyewitness declarant is required to testify directly and to be subject to cross-examination. To permit his opinion to be heard through the testimony of an official would cloak it with undeserved authority that could unduly sway a jury." Dallas & Mavis Forwarding Co., Inc. v. Stegall, 659 F.2d 721, 722 (6th Cir. 1981)(cited by Faries v. Atlas Truck Body Mfg. Co., 797 F.2d 619, 624 (8th Cir. 1986)). Plaintiff notes that this testimony is based, in part, on the written statements of MGE employees Brian Dresel and Eric Miller. Mr. Dresel, who was sent to the fire scene the day of the fire after the fire department notified MGE of the fire, signed a statement dated February 5, 2010, in which he claims that "a fire department person said (words to the effect of ) the water stream had hit the water heater's outer burner access cover and knocked it to its position as I saw it when I entered the basement." Doc. No. 62, Ex. 5. Plaintiff asserts that this is hearsay that should not be considered at trial. Further, Mr. Miller signed a February 5, 2010 statement in which he claimed to have reinstalled the inner and outer burner covers after he relit the water

8

heater. Additionally, he noted in his statement that there were no combustible materials near the water heater. See Doc. No. 62, Ex. 5. However, during his deposition, Mr. Miller indicated that he had no recollection of the April 14, 2004 service call, and instead he testified that it is his custom and practice to install the outer burner after relighting a customer's water heater during a service call. See Miller transcript, Doc. No. 62, Ex. 7, 45:18-46:3. During his deposition testimony, Dr. Russo stated that, although he was not a human behavior expert, "gas service people do this repetitive activity time after time after time, and they are very consistent about it. They are not going to remember what they did at each and every house. It would be unusual, okay? That would raise a flag to me. The fact that he answered it the way it normally is answered by people who do this day, after day, after day indicates to me he probably did it right." See Russo Transcript, Ex. 4 to Doc. No. 62, p. 262:9-23.

With respect to MGE's compliance with applicable pipeline safety regulations and prevailing industry practices, plaintiff indicates that these are conclusory and self-serving opinions arrived at only through reliance on statements of MGE personnel discussed above. Plaintiffs state these are an attempt to cloak, through expert opinion, the argument that Eric Miller did not cause the fire because he "would have" replaced the cover to the pilot light since he was trained and taught "in a manner which was safe and consistent with applicable pipeline safety regulations and prevailing industry practices." Plaintiff states such an opinion is baseless and highly prejudicial.

In response, defendant indicates: (1) As to opinion no. 5, (a) plaintiff is just quoting one of the explanations for Russo's opinion no. 5; Russo's opinion is that "Examination of the fire scene evidence indicates that the heat shield and combustion shield of the water heater were displaced by the movement of the items stored in the basement, the ignition of the propane, and the subsequent fire fighting activities . . . ." Doc. No. 70, Ex. A, p. 6. Defendant indicates that the witness statements are just part of the explanation for this conclusion, as Russo also examines fire scene evidence, such as the oxidation patterns

9

on the heat shield. Id.; (b) With respect to the "phantom firefighter," defendant states that the firefighter's statement qualifies as a present sense impression pursuant to FRE 803(1), and Mr. Dresel will otherwise be testifying at trial; and (c) that Mr. Miller does not recall every detail of his work in April 2004 does not discredit his statement, as it is his custom and practice to replace the outer burner cover after lighting a water heater's pilot light and he would have followed the same procedure at plaintiffs' residence on April 14, 2004 (see Miller Depo., Doc. No. 70, Ex. G, 45:11-46:3); (2) as to Opinion No. 6, the opinion that MGE complied with regulations and practices is sufficiently supported and reliable, as Russo is qualified to render opinions concerning compliance with pipeline safety regulations and prevailing industry practices (see generally Exs. A and D to Doc. No. 70, setting out Russo's qualifications), and here he testified that he reviewed the statements and deposition testimony of the MGE witnesses, reviewed the work tickets and service orders related to plaintiffs' residence and the work performed on April 14, 2004, and analyzed the fire scene in order to come to this conclusion. See Doc. No. 70, Ex. D, 221:9-223:2, 268:1-9, 271:15-272:14.

In reply, plaintiff again reiterates that Russo is not qualified, as a fire investigator, to give his opinion regarding "habit" evidence (i.e., because Miller is a MGE technician and does this work over and over again, he must have properly installed the outer cover when he was done). The Court notes that this is not an opinion that is contained in the expert report. Instead, this opinion comes from the expert's deposition, which was taken without the parties first seeking the Court's permission. See Scheduling and Trial Order (Doc. No. 54), pp. 4-5, ¶¶ 7.a.2., 7.b., and 7.c. The Court will not allow testimony not in conformity with the expert report (see id.), and thus it is unclear how this "opinion" would be allowed into evidence.

Instead, the Court finds that, like plaintiff's experts, expert Russo is entitled to make assumptions based on the evidence, and the factual basis for his assumptions can be challenged on cross-examination. To the extent that the "phantom firefighter" evidence is

10

subject to the plaintiff's separately-filed motion in limine (Doc. No. 99), the admissibility of Russo's conclusions that are supported by this evidence can be considered when the motions in limine are ruled. Therefore, plaintiffs' motion to exclude the testimony of witness Russo is **DENIED.**

## V. Goens' Motion to Exclude Certain Testimony of Defendant MGE's Expert Michael Schlatman (Doc. No. 63)

Plaintiff moves to exclude the following opinions of Michael Schlatman (who is a special investigator with Fire Consulting International, Inc.):

1. Opinion 4: "MGE service man, Mr. Eric Miller . . . indicates that at the time the water heater was relit, the access door was replaced, and that there were no items in too close proximity to the water heater."

2. Opinion 6: "Engineer Martin in his reports made an illogical leap, indicating that an MGE service man had left the burner access cover off when he relit the water heater on the date of April 14, 2004. . .That opinion has been contradicted by the statements of MGE Training Manager Brian Dresel and service man Eric Miller."

3. Opinion 7: "Additional information supplied by MGE Training Manager Brian Dresel indicated that the fire department water stream moved the door from its position on the water heater."

4. Opinion 8: "It is further my opinion that the most likely persons to place the combustibles too close to the heater were the residents of the house[, a]lthough they denied doing so[.] [I]t is almost impossible to believe that an eight year trained, experienced service man from MGE would place combustibles next to the water heater prior to his leaving."

5. Opinion 9: "Further information received from MGE Training Manager Brian Dresel indicated he was advised by 'a fire department person' that the water steam 'hit' the cover and 'knocked it' to a position where it was observed."

6. Opinion 10: "It is the opinion of this investigator that MGE employees would have acted in accordance with their training and experience. The service man, Mr. Eric Miller, indicates that he . . . replaced the burner access cover. Additionally, that he observed no objects near or against the water heater…It is, in my opinion, ludicrous to believe that a technician, who was performing his duties properly by red tagging the stove, would not properly replace the 'burner access cover.' Additionally, he certainly would not, in my opinion, move items to the location of the water heater."

> 7. Opinion 10: "MGE personnel, Kevin Fightmaster and Brian Dresel, acted properly in… taking abundant photographs on the date of the loss, April 27, 2004 . . .."

See Doc. No. 64, Ex. 3 (Report of Michael Schlatman).

With respect to the information contained in opinions 4, 6, 7, and 9, plaintiff indicates that these are based in large part on certain MGE witness statements of Brian Dresel and Eric Miller. In the Court's view, these statements contained in Schlatman's report have crossed the line so as to amount to improper vouching for the testimony of witnesses Dresel and Miller, and therefore this motion will be **GRANTED IN PART** and these statements will be **STRICKEN**.

With respect to the information in opinions 8 and 10 that is quoted above (¶¶ 1 and 6), Schlatman admitted he is not a human factors expert, and is no more qualified than the jury to opine on human behavior and what MGE personnel "would have done" in light of certain training and experience. See Doc. No. 64-4, p. 241:19-22. Additionally, plaintiff notes that the testimony that the person most likely to place combustibles near the heater would be the homeowner (opinion 8) is improper and not based on sufficient facts or data. The Court agrees with plaintiffs that Mr. Schlatman has not demonstrated that he is qualified to opine as to what MGE personnel would have done in light of their experience, and therefore this motion is **GRANTED IN PART** and these statements will be **STRICKEN.**

Finally, plaintiff indicates that the opinion that MGE personnel acted properly in taking photographs after the incident is irrelevant and not based on sufficient facts or data. The Court disagrees with plaintiffs' conclusion; instead, the Court finds that this opinion is based on sufficient facts and data, and any relevancy objection can be renewed at the time of trial. Therefore, this motion is **DENIED IN PART** as it relates to the information discussed in ¶ 7, opinion 10, above.

### **VI.** **Conclusion**

Therefore, for the foregoing reasons:

(1) Southern Union Company d/b/a Missouri Gas Energy's (hereafter "MGE") Motion to Exclude Plaintiffs' Experts (Doc. No. 59) is **GRANTED IN PART** and **DENIED IN PART**;

(2) Goens' Motion to Exclude Certain Testimony of Defendant MGE's Expert Sammy Russo (Doc. No. 61) is **DENIED**; and

(3) Goens' Motion to Exclude Certain Testimony of Defendant MGE's Expert Michael Schlatman (Doc. No. 63) is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS SO ORDERED.**

/s/Fernando J. Gaitan, Jr.
Fernando J. Gaitan, Jr.
Chief United States District Judge

Dated: 06/23/10
Kansas City, Missouri